### JOSHUA MORSS *vs.* THE BOSTON & MAINE RAILROAD.

Where county commissioners, in assessing damages for land taken for a railroad, before the act of 1841, *c.* 125, was passed, awarded a sum of money to be paid to the complainant, and also provided that the proprietors of the road should make and maintain certain fences for his benefit, and such complainant appealed from the award of the commissioners to a jury, who assessed damages in his favor, but made no order in their verdict as to the fences, it was held, that the propi·e-tors of the road were under no legal obligation to make and maintain fences, agreeably to the award of the commissioners.

If, on a hearing before a jury for the assessment of damages for land taken for a railroad, it is agreed between the parties, that the proprietors of the road shall make and maintain fences against the owner of the land taken, along the line of the road, such agreement, if valid, can only be enforced against the proprietors of the road, in an action by the party with whom it is made, and not by any subsequent purchaser of the estate to which it relates.

The fact, that the proprietors of a railroad have erected fences along the line of their road, against the land of a particular individual, is not of itself evidence of any obligation on the part of the proprietors, to make or maintain fences for the benefit of such person.

THIS was an action on the case, to recover damages of the defendants, for an injury sustained by the plaintiff, by reason of the defendants' negligence in not making and maintaining

a fence against the plaintiff's land, on the line of their rail-road in Andover.   The injury alleged was the loss of the plaintiff's cow, which was killed on the track of the defendants' road, by one of their locomotives.

It appeared, on the trial, which was before *Wells*, C. J., in the court of common pleas, that the cow escaped from the plaintiff's land, in consequence, as the plaintiff alleged, of a defect in certain fences which the defendants were bound to make and maintain, and got upon the track of the road, where she was struck by a locomotive and killed.

It was in evidence, on the part of the plaintiff, that, at the time of the location of the defendants' road, the plaintiff's land belonged to one Wardwell, who applied to the county commissioners to assess the damages to which he was entitled for the location; that the commissioners awarded him a sum in damages, and provided also in their award, that the defendants should make and maintain the fences; and that an appeal was taken from this award to a jury, who assessed damages, but made no order in their verdict on the subject of the fences.

The plaintiff offered to prove, that, at the time of the hearing before the jury, it was understood and agreed by the petitioner and the defendants, both acting by their counsel, that the defendants should build and maintain the fences on both sides of their railroad, and that no damages were claimed or allowed by the jury to the petitioner for fences.

The plaintiff also offered to prove, that, in consequence of the agreement above mentioned, the defendants had made the fences along the line of their road, and that they fenced against the land of the plaintiff, along the line of the road, wholly on the one side and partly on the other, but that the fence was temporary on one side, and that at the part of the road where the alleged negligence existed, there was a high and steep embankment, which the defendants had not fenced at the time of the accident; that the defendants had at that time furnished materials for a fence to be built at the place in question, and had such materials on the ground, but

no fence had been built; and that the defendants, by their agent, employed by their superintendent, who was authorized by a vote of the defendants to build the fences along the line of the road, both before and after the time of the accident, had promised and agreed to make the fence.

The court ruled, that a parol agreement to make the fences was inadmissible, in evidence, and that the evidence offered as above was incompetent, and insufficient to charge the defendants with the duty of building or maintaining the fences.

The jury returned a verdict for the defendants, and the plaintiff alleged exceptions.

The case was submitted at a former term, without argument, by *N. J. Lord,* for the plaintiff, and *G. Minot,* for the defendants.

SHAW, C. J.* The only question in the present case is, whether it was the duty of the defendants, to make and maintain fences on the plaintiff's land, along the line of their railroad. The action is on the case, for negligence, in not making and repairing such a fence; by means of which, as the plaintiff alleges, his cow escaped from his own land, and got upon the track of the railroad, and was killed by a locomotive engine.

It is not stated at what time this railroad was laid out, but we assume, that it was laid out prior to the year 1841. By a statute passed in that year, (*St.* 1841, *c.* 125,) it was provided, that the county commissioners, in estimating damages for land taken for a railroad, might direct that fences and other structures should be built and maintained by the proprietors of the railroad, in relief of the owners of the land, and that such direction should not be altered or changed by the verdict of a jury. But no such requisition, in terms, previously existed; and, assuming as we do, that this road was laid out, and the damages assessed prior to the year 1841, the rights and duties of the parties must depend upon the preëxisting provisions of the revised statutes. If it was then competent for commissioners to direct fences, culverts, or bridges,

---

* WILDE, J., did not sit in this cause.

to be made and maintained, it was in pursuance of their general authority to provide indemnity for the land owner; and such fences and other structures might often afford a more adequate and permanent indemnity, than an award of damages in money. But, as the law then stood, when an application for a jury was made and allowed, the whole question of damages was open for their consideration, and the order of the commissioners, directing the building of fences, as well as that for the payment of money, was vacated and annulled; and not being reinstated by the jury, the order remained void, and the necessary inference is, that the whole damage was assessed in money. No duty, therefore, was imposed upon the corporation by that proceeding, to build or repair fences.

We are of opinion, that the offer of parol evidence to prove that it was understood and agreed, before the jury, that such fences should be made, was rightly rejected. If such parol promise, made by persons authorized, and on good consideration, were available at all, it could only be enforced in an action by the person to whom it was made. But to allow it in this case, would be to give it the effect of a covenant running with the land, to be enforced by any subsequent owner.

The fact, that the corporation had placed fences on the plaintiff's land, along the line of the track, affords no evidence of a duty, on their part, in favor of the plaintiff, to make and maintain such fences; the defendants may have done what they did for the better security of their own trains, or for the safety of their conductors and passengers.

*Exceptions overruled.*